IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRAVIS ALLRED, on behalf of himself and all others similarly situated, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) Case No. 3:20-cv-527-DWD ) |
| PEOPLES NATIONAL BANK, N.A., | ) ) |
| *Defendant*. | ) ) ) |

**MOTION TO DISMISS AMENDED COMPLAINT
AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(6) and SDIL-LR 7.1(c), Defendant Peoples National Bank, N.A. moves the Court to dismiss Plaintiff's Amended Class Action Complaint for Damages (Doc. 31) for failure to state a claim on which relief can be granted.

**INTRODUCTION**

Travis Allred ("Plaintiff") is a former customer of Defendant Peoples National Bank, N.A. ("PNB"). He seeks to represent a class of PNB checking account holders who were assessed nonsufficient funds ("NSF") fees by PNB. Rather than respond to PNB's motion to dismiss (Docs. 22-23), Plaintiff filed an amended complaint. The new pleading changed some terminology and deleted key admissions (including that PNB's "Account Contract allows it to assess an Overdraft or Returned Item Fee when a withdrawal is attempted against a negative balance," Doc. 1 ¶ 15, which conceded that PNB was permitted to charge a fee each time a merchant requested payment). Even with these changes, the Amended Complaint still does not state a claim and therefore should be dismissed.

Plaintiff's primary claim is for breach of contract, which centers on the second of two NSF fees PNB assessed to his account. Amnd. Compl. ¶¶ 25–27. He admits that the first fee was

permitted by his Account Contract, *id*. at ¶ 27 ("Plaintiff recognizes he owed Defendant a *single* Overdraft or Returned Item Fee from that item . . ."). He challenges the second fee, however. *Id*. at ¶ 20 ("[PNB] breached its contract when it charged Overdraft or Returned Item Fees for 'retried' payments stemming from a single transaction . . . thus charging more than one Overdraft or Returned Item Fee").

Plaintiff admits that he did not have sufficient funds in his account either time PNB received requests for payment from the merchant to whom Plaintiff had tendered his check. By admitting this, he also admits that he failed to perform under the Account Contract *before* PNB did what his Amended Complaint alleges was PNB's breach—assessing the second NSF fee. His failure to plead that he performed under the Account Contract bars his claim that PNB breached the contract.

The Amended Complaint also fails to explain plausibly how PNB's assessing the first fee complied with the Account Contract, while assessing the second fee *breached* the contract. As the Court will see, both fees complied with the Account Contract and fee schedule, as well as with the rules governing how banks process ACH transactions. Finally, Plaintiff's claim under the Illinois Deceptive Trade Practices Act fails to state a claim because he has not sought available injunctive remedies. Like the Complaint before it, the Amended Complaint fails to state a claim under either theory.

## BACKGROUND FACTS

### Agreement Between Plaintiff and PNB

1. Plaintiff is a resident of Norris City, Illinois. Amnd. Compl. ¶ 9.

2. On May 27, 2016, Plaintiff opened a checking account with PNB under the terms set forth in PNB's Account Contract. *Id*. ¶ 21.

3. Plaintiff concedes that the Account Contract governed the way in which he could conduct his banking relationship with PNB. *Id*.

4. In the Account Contract, Plaintiff agreed he would be "liable for any account shortage resulting from charges or overdrafts" and "[t]his liability is due immediately." Doc. 31-1 ¶ 3.[1]

5. At the time of the transactions in question, the fee PNB charged for overdrafts or nonsufficient funds was $33.00 per item. Doc. 31-2 at 1.

### The Merchant Requests for Payment While Plaintiff Had Insufficient Funds

6. On December 2, 2019, Plaintiff wrote a check in the amount of $14.44, without having sufficient funds in his PNB account to cover it. Amnd. Compl. ¶ 25.

7. According to Plaintiff's account statement, which Plaintiff has appended as Exhibit 3 to his Amended Complaint, the December 2 check was "electronified" by the merchant, pursuant to a separate agreement between the merchant and Plaintiff. This was done immediately after Plaintiff tendered his check to the cashier. Doc. 31-3 at 2.

8. Later, when the merchant's bank[2] tried to withdraw funds from Plaintiff's PNB account, PNB refused the request because Plaintiff did not have sufficient funds in his account. PNB charged Plaintiff a $33.00 NSF fee. Amnd. Compl. ¶ 25.

---

[1] The Court may consider more than what is within the four corners of a Complaint. The Court may consider, for example, documents attached to, critical to, or referred to in a Complaint and information that is subject to judicial notice. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013); *see also Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 979 n.2 (D. Minn. 2014) (holding that "bank statements, although not explicitly referenced in the [complaint], are central to [plaintiff's] claims" and plaintiff "does not dispute the accuracy of the statements") (following *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 581 & n.3 (E.D. Pa. 2004)); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (holding that a court may consider documents "necessarily embraced by the pleadings" on a motion to dismiss).

[2] On information and belief, the merchant used a commercial account at PNC Bank to handle electronic transfers, including plaintiff's purchase, for its stores in Southern Illinois. To avoid the awkward sounding "merchant's bank" or the perhaps confusing "PNC," PNB will refer to the merchant and its bank simply as "the merchant."

9. Plaintiff concedes that PNB "may, at [its] discretion, honor withdrawal requests that overdraw your account" and charge a fee for overdrafts. *Id.* ¶ 16.

10. Plaintiff concedes that PNB properly assessed the $33.00 NSF fee on December 3, 2019, because Plaintiff did not have sufficient funds in his account. *Id.* ¶ 27; Doc. 31-3 at 3.

11. A week later, on December 9, 2019, the merchant attempted for a second time to withdraw funds from Plaintiff's account. PNB again refused because Plaintiff still did not have sufficient funds in his account. Amnd. Compl. ¶ 26.

12. PNB charged Plaintiff a $33.00 NSF fee on December 10, 2019, as a result. *Id.*; Doc. 31-3 at 4.

### Plaintiff's Promise To Provide Notice To PNB

13. Paragraph 11 of the Account Contract specifies how Plaintiff could give PNB notice of any problems with his account:

> Any written notice you give us is effective when we actually receive it, and it must be given to us according to the specific delivery instructions provided elsewhere, if any. We must receive it in time to have a reasonable opportunity to act on it. If the notice is regarding a check or other item, you must give us sufficient information to be able to identify the check or item, including the precise check or item number, amount, date and payee.

Doc. 31-1 ¶ 11.

14. Paragraph 12 of the Account Contract explains Plaintiff's responsibilities if he believed PNB had made an error on his account statement:

> Failure to examine your statement and items and report any errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours.

*Id.* ¶ 12.

SL 4037298.3
SL 4041895.1

**Laws Governing The Parties' Agreements**

15.   Paragraph 2 of the Account Contract discloses how words and phrases will be construed:

> Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular.

*Id.* ¶ 2.

16.   Paragraph 2 of the Account Contract also discloses the law and regulations governing the agreement:

> This agreement is subject to applicable federal laws, the laws of the state of Illinois and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules (except to the extent that this agreement can and does vary such rules or laws).

*Id.* ¶ 2.

17.   In Paragraph 21, Plaintiff expressly agreed that any transactions to or from his PNB account would be governed by ACH rules:

> You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code.

*Id.* ¶ 21.

**SUMMARY OF ARGUMENT**

Plaintiff asserts claims against PNB for breach of contract, including breach of the covenant of good faith and fair dealing, Amnd. Compl. ¶¶ 60–73, and for violation of the Illinois Uniform Deceptive Trade Practices Act. *Id.* ¶¶ 75–80. The Court should dismiss the Amended Complaint for four reasons: *First*, Plaintiff has not and cannot allege that he performed under the Account Contract. His failure to perform precludes his making a *prima facie* case for breach of

contract under Illinois law. *Second*, Plaintiff cannot state a facially plausible claim that PNB breached its Account Contract. PNB handled Plaintiff's check to the merchant—and the merchant's subsequent attempts to withdraw money from Plaintiff's account pursuant to their separate agreement—exactly as PNB disclosed to Plaintiff that it would. *Third*, Plaintiff's claim that PNB breached its duty of good faith and fair dealing is not actionable as an independent claim. *Fourth*, Plaintiff has failed to state a cognizable claim that PNB violated the Illinois Uniform Deceptive Trade Practices Act because Plaintiff cannot state a claim for the injunctive relief permitted by the Act.

## ARGUMENT AND AUTHORITIES

**I.      Standard to evaluate whether Plaintiff's Amended Complaint states a claim.**

To avoid dismissal under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008). The pleading must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). While "plausible" is not the same as "probable," plausibility nonetheless "asks for more than a sheer possibility that a defendant has acted unlawfully." *Schumacher*, 844 F.3d at 675 (citations omitted). Plausibility "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555.

Courts insist on "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success. *Twombly*, 550 U.S. at 558-59. A plaintiff who hopes to survive a motion to dismiss must "plead some facts that suggest a right to relief that is beyond the speculative level." *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir.

2009) (internal quotation marks omitted). This standard requires "more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted).

**II.     The Amended Complaint fails to state a claim for breach of contract.**

The parties agree that the Account Contract is subject to Illinois law. Doc. 31-1. The parties also agree that, when PNB refused the merchant's first attempt to withdraw funds, PNB did not breach the Account Contract. Amnd. Compl. ¶ 27. According to the Amended Complaint, PNB breached the contract only when it assessed a second NSF fee, after the merchant made a second unsuccessful attempt to withdraw money from Plaintiff's account. *Id*. This claim fails.

To state a claim for breach of contract under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff." *Pepper Const. Co. v. Palmolive Tower Condo., LLC*, 2016 IL App (1st) 142754, 59 N.E.3d 41, 66; *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732, 911 N.E.2d 378, 397 (2009).[3] Plaintiff's Amended Complaint fails to allege plausibly either his performance or PNB's breach. In Section A below, PNB shows the two ways in which Plaintiff failed to perform: first, by failing to maintain a positive account balance; and second, by failing to give PNB prompt notice of the supposed error that he now claims breached the Account Contract.

In Section B, PNB demonstrates that the Amended Complaint does not plausibly show that PNB breached the Account Contract. PNB fully disclosed how it would handle NSF checks.

---

[3] The Seventh Circuit uses a minor variation of this standard. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) ("Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) *substantial* performance by the plaintiff; (3) a breach by the defendant; and (4) *resultant* damages.") (emphasis added).

Plaintiff agreed to those terms and PNB handled the merchant's attempts to withdraw funds from Plaintiff's account just as the Account Contract explained.

### A. Plaintiff cannot plead a claim for breach of contract because he cannot allege that he performed under the Account Contract.

For Plaintiff to state a claim for breach of contract under Illinois law, he must allege that he performed. *See Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, 274 F. Supp. 3d 787, 792 (N.D. Ill. 2017) ("To be sure, performance by the plaintiff is an essential element of breach of contract claims under Illinois law."). This requires him to plead that he performed "all of his . . . obligations under the contract" and all conditions precedent. *Floorcoverings Int'l., Ltd. v. Swan*, No. 00 C 1393, 2000 WL 528480, at *4 (N.D. Ill. Apr. 25, 2000); *Hartshorn v. State Farm Ins. Co.*, 361 Ill. App. 3d 731, 735, 838 N.E.2d 211, 215 (2005). Plaintiff's claim is thus barred for two reasons: First, he admits to breaching the Account Contract by writing a check against insufficient funds; and second, by failing to notify PNB about his dispute over the second NSF fee.

### 1. Plaintiff has conceded that, because he had insufficient funds in his account, he failed to perform under the Account Contract.

Maintaining an account balance sufficient to satisfy requests for payment is the essence of a functioning checking account. PNB's Account Contract presupposes that an account holder will maintain such a balance, but also anticipates (through overdraft and NSF fees) that such will not always be the case. When the account balance became negative, Plaintiff agreed he would be liable for any account shortage and the liability is due immediately. Amnd. Compl. ¶ 27.

Plaintiff admits he wrote his check to the merchant when he lacked sufficient funds, thereby breaching the Account Contract. He concedes, as he must, that PNB was allowed to assess him an NSF fee after the bank declined the merchant's first request for payment. *See supra* ¶ 10; Amnd. Compl. ¶ 27. This concession precludes his pleading that he performed all of his obligations under

8

the contract, which is an essential element of his contract claim. *See Floorcoverings*, 2000 WL 528480, at *4. As a result, he has failed to state a claim.

### 2. Plaintiff also failed to comply with the notice provision of the Account Contract.

Even if Plaintiff could make a plausible showing that the second fee breached the contract, the Amended Complaint shows that Plaintiff failed to comply with the conditions precedent to his seeking redress for it. The Account Contract says:

> Failure to examine your statement and items and report any errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours.

By failing to plead that he complied with this provision, Plaintiff has conceded that he did not perform fully.

Plaintiff received an account statement from PNB showing that his account had been assessed NSF fees on December 3 and 10, 2019. The account statement, dated December 26, 2019, is attached to the Amended Complaint. Doc. 31-3. Nothing in the Amended Complaint suggests, however, that Plaintiff contacted PNB to complain about the either of the NSF fees, which he had promised to do. *See supra* ¶¶ 13-14. By not alleging such a communication, he has omitted pleading an essential element of his claim.

### B. Plaintiff cannot plead a claim for breach of contract because the Account Contract authorizes PNB to charge an NSF fee each time a third party requests payment and the request is returned for insufficient funds.

The Account Contract incorporates a separate Fee Schedule which lists fees PNB charges for services to its customers. *See* Doc. 31-2. The schedule lists "Overdraft or Nonsufficient Funds (NSF)" as subject to a fee of "$33.00 per item." *Id*. Plaintiff suggests that the phrase "per item" means that PNB may not charge him more than one NSF fee for the check he tendered to the

9

merchant. Amnd. Compl. ¶ 16 (" . . . nothing in the Account Contract entitles Defendant to charge multiple Overdraft or Returned Item Fees stemming from a single item or transaction.").

This suggestion contains two serious flaws. The phrase "$33.00 per item" is simply a price—what PNB charges for an NSF. "Per" is a preposition, defined as "with respect to every member of a specified group: for each." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 872 (1987). "Per" does not make "item" singular. Instead, it makes "item" part of a group. "Per item" merely means that, among the larger group of "items," a fee of $33.00 may be assessed for each one of the group that is presented for payment against insufficient funds. That "per item" happens to be singular does nothing to resolve whether Plaintiff's check was once and forever a single item. For that we must look elsewhere in the Account Contract. If the "per item" were truly dispositive on this issue, how is Plaintiff to account for agreeing with PNB beforehand that the singular or plural forms of words in the Account Contract are interchangeable?[4]

Then consider again what Plaintiff has pled about the December 3 NSF fee. "Plaintiff recognizes he owed [PNB] a *single* Overdraft or Returned Item Fee from that item only . . . ." Amnd. Compl. ¶ 27. Even after drawing all favorable inferences in Plaintiff's favor, several hard facts emerge from this statement. Plaintiff admits that the merchant was within its rights to accept his paper check and convert it to an electronic transaction governed by the ACH system. Plaintiff agreed in the Account Contract to be bound by ACH rules. *See supra* ¶ 17. Plaintiff concedes that the merchant was correct to request payment from his PNB account by using the ACH system. He concedes that he did not have enough money in his account for PNB to honor the merchant's

---

[4] "Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular." Account Contract (Doc. 31-1) ¶ 2.

request, *id.*, which left the merchant unpaid and Plaintiff rightfully subject to a $33.00 NSF fee (and potentially subject to a misdemeanor charge under Illinois law, 720 ILCS 5/17-1(B)).

A week later, when the merchant again requested funds from Plaintiff's account, the ACH process worked in exactly the same way: the merchant requested payment, PNB noted Plaintiff's insufficient balance, PNB declined the merchant's request, and then assessed an NSF fee to Plaintiff's account. According to the Amended Complaint, only the last of these four steps—PNB's assessing the fee on December 10—was a breach of contract, even though just a week earlier that very same step *complied* with the contract. How is this so? Where in the Account Contract does it say that PNB could not treat the merchant's second request for payment for what it was—a second transaction? There is no such prohibition in the Account Contract.

Plaintiff's original complaint even admitted that any attempt to withdraw funds against a negative balance—regardless of what the account holder intended to pay for—triggers PNB's right to assess a fee. Doc. 1 ¶ 15 ("Account Contract allows [PNB] to assess an Overdraft or Returned Item Fee when a withdrawal is attempted against a negative balance.") (emphasis added). Plaintiff deleted this admission from his Amended Complaint, but that cannot save his claim. As illustrated below, the plain language of the Account Contract allowed PNB to assess a NSF fee for each attempted withdrawal. Plaintiff cannot escape this reality via his attempt at a more careful pleading.

1. **The plain language of the Account Contract permitted PNB to assess Plaintiff's account with two NSF fees.**

Plaintiff states that "[t]he plain language of Defendant's Account Contract provides that a single item is capable—at most—of incurring a *single* Overdraft or Returned Item Fee, even if that item is repeatedly reprocessed." Amnd. Compl. ¶ 30. He does not tell the Court, however, where the Account Contract actually says this. In fact, the plain language of the Account Contract provides just the opposite. The portion of the Account Contract dealing with overdrafts (and its

11

functional equivalent NSF refusals) does not use the word "item." See Doc. 31-1, ¶ 5. The Amended Complaint confirms this, quoting the Account Contract to say that PNB "may, at [its] discretion, honor *withdrawal requests* that overdraw your account" and charge a fee for overdrafts. Amnd. Compl. ¶ 16.

### 2. The Account Contract is not ambiguous and should be interpreted according to its plain meaning.

Plaintiff admits that the Account Contract is plain and unambiguous. *See* Amnd. Compl. ¶ 18 ("Notwithstanding the Account Contract's plain language . . ."); *id*. ¶ 30 ("The plain language of Defendant's Account Contract . . ."). That PNB and Plaintiff disagree over how the Account Contract should be interpreted does not mean the contract is ambiguous. *See Kaplan v. Shure Bros.*, 266 F.3d 598, 605 (7th Cir. 2001).

If, as Plaintiff suggests, there is no ambiguity in the contract, the Court may interpret it as a matter of law. *See*, *e.g.*, *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 380 (7th Cir. 2009) (applying Illinois law and holding "[i]f the contract is unambiguous, we must enforce it as written."). To survive this motion, therefore, Plaintiff must show that something in the Account Contract gives rise to a reasonable interpretation different than PNB's interpretation.[5] *See Lambert*, 2019 WL 3843064, at *5 (holding that because the challenged insufficient funds fees were unambiguously authorized, "the breach of contract claim must be dismissed for failure to state a claim"). Plaintiff has not done so.

---

[5] The Complaint cites account contracts used by several other banks, apparently to show what PNB "was contractually required to do, if it was going to engage in charging multiple Overdraft or Returned Item Fees for the same item or transaction." Amnd. Compl. ¶¶ 34–38. Because this case centers solely on whether PNB breached its Account Contract with Plaintiff, the agreements other banks use are irrelevant. *See, e.g., Choy v. Space Coast Credit Union*, Case No. 2019-CA-039839, 2020 WL 3039243, *3 (Fl. Cir. Ct. May 11, 2020) ("Plaintiffs have also submitted for the Court's consideration, 'much better language' on these two issues used by various institutions throughout the United States. While this is appreciated, those examples cannot inform the Court's analysis. They are not relevant to whether the provisions at hand are clear and unambiguous.").

>   3.   **PNB complied with ACH rules by processing individually each of the merchant's attempts to withdraw funds from Plaintiff's account as PNB received those requests.**

Elsewhere in the Complaint, Plaintiff argues—falsely—that the merchant's two requests for payment were really just a single "item" and were therefore subject to only one NSF fee. *See* Amnd. Compl. ¶ 27. Plaintiff compounds this falsehood by arguing that (a) it was within PNB's discretion whether to process the merchant's "retry" and (b) Plaintiff had to *authorize* the merchant's "retry." *See, e.g., id.* ¶ 31.[6]

Plaintiff makes much of the fact that, because he wrote only one check to the merchant, there could be only one item against which an NSF fee could be assessed. Plaintiff's decision to present a check to the merchant without sufficient funds in his account triggered the merchant's right to make more than one withdrawal attempt under the ACH rules and PNB's right to assess a fee in connection with each attempt. Plaintiff's check to the merchant was electronified, *supra* ¶ 7, and became an ACH transaction.[7] Plaintiff expressly agreed "to be bound by automated clearing house association rules." *See supra* ¶ 17. NACHA rules govern what happens when an ACH transaction is returned for insufficient funds. *See* NACHA, 2019 Operating Guidelines, Ch. 10, *ODFIs and Return, Dishonored Return and Contested Dishonored or Corrected Return Entries* ("Operating Guidelines").[8] These rules make clear that the sequence of rejecting and returning an

---

[6] Since 2015, NACHA requires the merchant to include the description "RETRY PYMT" in second and third payment entries. *See* NACHA Rule § 2.12.4.2.

[7] *See* Ronald J. Mann, *A Requiem for Sam's Bank*, 83 CHI.-KENT L. REV. 953, 972 (2008) ("Electronic check conversion converts a paper check at the point of sale to an ACH transaction cleared through the NACHA network (a [point-of-purchase] entry in NACHA's terminology)."); *see also* 13 No. 3 ELEC. BANKING L. & COM. REP. 6 (The ACH has experienced dynamic change during the last seven years. NACHA's introduction of several electronic check (e-check) applications in 2000 marked a new phase of expanded use of the ACH. Applications were introduced that allowed for the capture of check MICR line information to create ACH transactions at the point of purchase . . . .).

[8] The Court may take judicial notice of NACHA rules because the rules are incorporated by reference into the parties' contract. *See U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 696 (8th Cir. 2014) (under Rule 12(b)(6), a court may consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and]

13

entry for insufficient funds "can take place only once; there is no further recourse available to the parties within the ACH Network." *Id.* at Operating Guidelines 53 (emphasis added). In other words, once the merchant had attempted to withdraw funds from Plaintiff's account and PNB declined it, there was nothing more PNB could do.

The merchant, which was still unpaid, could do more—it could make a second request for payment.[9] NACHA rules allow the merchant to "[r]einitiate an entry" through the ACH network "a maximum of two times following the return of the original entry."[10] Once the merchant reinitiated the entry, to which the merchant's bank assigned a new, unique item number, PNB was required to process the second request just as it had the first. Indeed, PNB had no choice but to "honor all debits presented" by the merchant, regardless of whether Plaintiff separately authorized the reinitiated entry. *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 571 (E.D.N.Y. 2015) (citing NACHA Rule 3.1.1; *Affinion Benefits Grp. LLC v. Econ-O-Check Corp.*, 784 F. Supp. 2d 855, 876 (M.D. Tenn. 2011)). By reinitiating the entry, the merchant warranted to PNB that it had authority to make the second payment request.[11]

---

matters of public record'"); *Cachet Fin. Servs. v. C & J Assocs., Inc.*, 373 F. Supp. 3d 1303, 1304 n.2 (N.D. Cal. 2019) (taking judicial notice of NACHA rules).

[9] It is the merchant (not the customer's bank) that submits each payment request. *See generally Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426 (6th Cir. 2018) ("ACH transactions are electronic payments made from one bank account to another and involve one party providing their account number and routing number"); *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 380-81 (E.D. Pa. 2015) (describing ACH transactions and application of NACHA rules); *see generally* NACHA Rules, https://www.nacha.org/rules/.

[10] ACH Operations Bulletin #1-2014, *see infra* n.11; NACHA Rules, pg. OG110 ("Receiving Reinitiated Entries.").

[11] *See* Nat'l Automated Clearing House Ass'n, ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs (Sept. 30, 2014) (hereafter, "Bulletin"), available at https://www.nacha.org/news/ach-operations-bulletin-1-2014-questionable-achdebit-origination-roles-and-responsibilities#ftnref27. "ODFI" means Originating Depository Financial Institution. "RDFI" means Receiving Depository Financial Institution. In this case, the merchant's bank was the ODFI and PNB the RDFI.

SL 4037298.3
SL 4041895.1

For purposes of the ACH system, the reinitiated entry was a new transaction. *See Lossia*, 895 F.3d at 427 n.2 (explaining that ACH transactions involve the following "sequence of events": "the merchants (through their banks) initiate[] the transactions by sending them to the Federal Reserve, which in turn forward[] the transactions to [the credit union or bank] for processing"). By rule, PNB must check Plaintiff's account balance each time it receives a payment request. Plaintiff admits that the merchant's first request justified PNB checking his account balance and, finding it insufficient, declining the request and assessing him an NSF fee. Plaintiff's suggestion that the merchant's second attempt—an attempt expressly authorized by rules to which he agreed—should yield the exact opposite result is wholly implausible.

**III.    Plaintiff's claim that PNB breached the implied covenant of good faith and fair dealing fails as a matter of law.**

Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. *Sandoni v. United Airlines, Inc.*, 2015 IL App (1st) 150485, 47 N.E. 3d 1152, 1165 (2015) (Harris, J., dissenting); *see also Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 295, 751 N.E.2d 1126 (2001) (listing Illinois cases rejecting attempts to recognize an independent cause of action for breach of implied duty of good faith and fair dealing). Instead, it is a derivative principle used to help decide the parties' intent when an instrument is susceptible of two conflicting constructions. *Id.*; *Resolution Tr. Corp. v. Holtzman*, 248 Ill. App. 3d 105, 112, 618 N.E.2d 418, 424 (1993). Plaintiff's claim under the implied covenant should, therefore, be dismissed because it is not recognized by Illinois law.

**IV.    Count II under the Illinois Uniform Deceptive Trade Practice Act also fails to state a claim.**

Plaintiff alleges that PNB violated the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA" or "Act"), 815 ILCS §§ 510, *et seq.*, by assessing the December 10 NSF fee. Amnd.

15

Compl. ¶ 77. Plaintiff's claim under the IUDTPA fails for two reasons. First, while the IUDTPA contemplates that a consumer may be entitled to injunctive relief, Plaintiff has failed to make such a claim; he cannot plausibly allege that PNB will cause him future harm. He is no longer a PNB customer and, even if he were, he knows how to avoid NSF fees by maintaining a sufficient account balance, which Illinois law and the Account Contract required him to do. Second, PNB did not violate IUDTPA as a matter of law because it complied with the Account Contract.

### A. Plaintiff has not alleged a harm the IUDTPA addresses.

The IUDTPA codifies the common law tort of unfair competition. *Brooks v. Midas-Int'l Corp.*, 47 Ill. App. 3d 266, 274, 361 N.E.2d 815, 821 (1977). The Act "is primarily directed towards acts which unreasonably interfere with another's conduct in business." *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98, 613 N.E.2d 1150, 1156 (1992). It is designed to enjoin trade practices that "confuse or deceive the consumer" or that "unjustly injure the honest business [person]" and prevent him/her from receiving "just rewards from effective advertising and consumer satisfaction." *Id.* (citing prefatory notes). Plaintiff's allegations do not fall under the Act. He contends that PNB assessed fees against his bank account to which the bank was not entitled. This is not the type of conduct that the Illinois legislature intended to proscribe under the IUDTPA.

### B. Count II fails to state how PNB violated the IUDTPA.

The Amended Complaint explains *what* Plaintiff believes violates the Act ("Defendant's policy and practice of breaching its Account Contract with Plaintiff by charging multiple Overdraft or Returned Item Fees for the same item or transaction is a violation of the ILDTP"). Amnd. Compl. ¶ 77. He does not, however, explain *how* PNB's conduct violated the Act. He dodges this question by unpacking four of the proscribed deceptive trade practices listed in the statute, along with the catch-all "any other conduct which similarly creates a likelihood of confusion or

misunderstanding."[12] But nowhere does Plaintiff link PNB's conduct to any one of the prohibited practices. *Twombly* "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." 550 U.S. at 555. Plaintiff has not made a "showing" of entitlement to relief. Instead, he relies on a "blanket assertion," which is insufficient.

        **C.    The Amended Complaint fails to make a plausible claim that future harm to Plaintiff warrants injunctive relief.**

Plaintiff must also allege that PNB's conduct will likely cause him some future harm. *See* 815 ILCS § 510/3; *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 860, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1995) ("a cause of action under that Act can be stated and injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future"); *Popp*, 613 N.E.2d at 1157 ("[T]o maintain such an action, the consumer must 'allege facts which would indicate that he is likely to be damaged in the future.'"). This burden is hard to meet because, typically, the alleged damage for which the consumer is making a claim has already occurred.[13] Moreover, where plaintiffs are

---

[12] A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

    (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

    (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

    (9) advertises goods or services with intent not to sell them as advertised;

    (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS § 510/2(a); *See* Amnd. Compl. ¶ 77.

[13] *See* Brooks v. Midas– Int'l Corp., 47 Ill.App.3d 266, 5 Ill.Dec. 492, 361 N.E.2d 815, 821 (1st Dist. 1977) ("The problem inherent in such consumer actions is the inability to allege facts which would indicate that the plaintiff is 'likely to be damaged.'"); *Fullerton v. Corelle Brands, LLC*, No. 18-cv-4152, 2019 WL 4750039, at *12 (N.D. Ill. Sep. 30, 2019) ("Indeed, the UDTPA's future harm requirement frequently proves problematic for plaintiffs asserting consumer claims.").

aware of a deceptive practice, they are not likely to be damaged by it in the future because they know to avoid it. *See, e.g., Grazewksi v. Coronet Ins. Co.*, 108 Ill.2d 243, 91 Ill.Dec. 628, 632, 483 N.E.2d 1263, 1267 (Ill. 1985) ("The plaintiffs know the problems associated with the coverage, and, armed with that knowledge, can avoid it."); *Johnson v. Wal-Mart Stores Inc.*, No. 3:15-cv-775-DRH-DGW, 2016 WL 3753663 (S.D. Ill. July 14, 2016) ("[T]he relevant question is whether knowledge of the deceptive conduct enables the plaintiff to invoke his or her power as a consumer to somehow avoid future harm.").

Federal courts sitting in Illinois have dismissed such claims based on the failure to meet this burden. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 740-41 (7th Cir. 2014); *Fullerton*, 2019 WL 4750039, at *11-12; *Johnson*, 2016 WL 3753663, at *2-4 (S.D. Ill. July 14, 2016). Plaintiff's IUDTPA claim should be dismissed because he has not alleged a risk of future harm. In addition, it is impossible for Plaintiff to meet the burden of pleading future harm because he is no longer a PNB customer.

> **D.   Plaintiff's claim that PNB has violated the IUDTPA also fails because it duplicates his claim for breach of contract, which is insufficient under Illinois law.**

Breach of contract, without more, cannot be the basis for a consumer fraud action. *Avery v. State Farm Mut. Auto. Ins. Co*., 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (Ill. 2005) (explaining that if every unfulfilled promise were actionable as consumer fraud, then plaintiffs could convert any suit for breach of contract into a consumer fraud action and effectively supplement every breach of contract claim with a redundant remedy). As the Illinois Supreme Court explained: "A 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a

SL 4037298.3
SL 4041895.1

contract." *Id*. (quoting with approval *Kleczek v. Jorgensen*, 328 Ill.App.3d 1012, 1022, 263 Ill.Dec. 187, 767 N.E.2d 913 (2002)).

"When consumer fraud is alleged in a contractual setting, the plaintiff must instead point to 'deceptive actions or practices distinct from any underlying breach of contract,' which means that the consumer fraud and contract claims cannot 'rest on the same factual foundation.'" *Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'n Servs., Inc.*, 190 F.Supp.3d 765, 772 (N.D. Ill. 2016) (citing *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir.2011)). "Even a ''widespread' or 'systemic' breach of contract does not suffice to state a claim for consumer fraud under the statute,' notwithstanding a plaintiff's assertion that the breach implicates consumer-protection concerns." *Id.*

Plaintiff's claim that PNB engaged in deceptive trade practices merely restates his breach of contract claim.[14] *See* Amnd. Compl. ¶ 77 ("Defendant's policy and practice of breaching its Account Contract with Plaintiff by charging multiple Overdraft or Returned Item Fees for the same items as alleged herein is a violation of the ILDTP."). Plaintiff's failure to plead that PNB engaged in deceptive acts or practices distinct from the alleged breach warrants dismissing this claim. *See, e.g., Serv. Corp. Int'l v. Stericycle, Inc.*, No. 19C1960, 2020 WL 43017, *4 (N.D. Ill. Jan. 4, 2020).

## CONCLUSION

Plaintiffs' Amended Complaint fails to state a claim for breach of contract because he cannot plausibly show that he performed under the Account Contract or that PNB did anything to breach it. Because PNB did not breach the Account Contract itself, the bank did not breach the duties of good faith and fair dealing. Likewise, Plaintiff's Amended Complaint fails to articulate

---

[14] To the extent the Court believes this claim covers some conduct beyond that covered by the breach of contract claim, the IUDPTA claim still fails for the other reasons outlined in section IV(A) to (C) *supra*.

SL 4037298.3
SL 4041895.1

plausibly how PNB violated the Illinois Uniform Deceptive Trade Practices Act. For each of these reasons the Amended Complaint should be dismissed and the Court should award PNB its attorneys' fees and costs pursuant to section 3 of the Account Contract (Doc. 31-1 at 2).

Respectfully submitted,

SPENCER FANE LLP

/s/ Megan D. Meadows
David M. Harris        #IL3127177
(Lead Counsel) (*pro hac vice*)
Megan D. Meadows       #IL6314885
1. N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Telephone: (314) 863-7733
Facsimile: (314) 862-4656
dharris@spencerfane.com
mmeadows@spencerfane.com

John C. Nettels (*pro hac vice*)
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
jnettels@spencerfane.com

*Attorneys for Defendant Peoples National Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the Southern District of Illinois on the 9th day of October, 2020, with notice of case activity generated and sent to counsel of record.

/s/ Megan D. Meadows

SL 4037298.3
SL 4041895.1